# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY WILLIAMS,<br>    Plaintiff<br><br>    v.<br><br>PA DEPT OF CORRECTIONS, et al.,<br>    Defendants. | C.A. 15-222 Erie<br><br>Magistrate Judge Baxter |

## **OPINION AND ORDER**[1]

United States Magistrate Judge Susan Paradise Baxter

## I.    INTRODUCTION

### A.    Relevant Procedural and Factual History

On September 3, 2015, Plaintiff Anthony Williams, a prisoner incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Named as Defendants are the Pennsylvania Department of Corrections ("DOC"), and the following staff members at SCI-Forest: Facility Grievance Coordinator Sarah Siegel ("Siegel"); Grievance Officer D. Meck ("Meck"); Dietary Managers Kevin Dittman ("Dittman") and Amy Skunda ("Skunda"); Dietary Supervisor Ryan Holloway ("Holloway"); Dietary Instructors Fred Attinger ("Attinger") and Teresa Harringer ("Harringer"); and Registered Nurse Mark Woody ("Woody").

Plaintiff's claims arise from a slip and fall incident that occurred on November 21, 2013, while Plaintiff was working in the kitchen at SCI-Forest. On that date, Plaintiff alleges that

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 28, 29].

1

Defendant Attinger instructed him, in Defendant Harringer's presence, to help prepare food for "mainmeal." (ECF No. 1, Complaint, at ¶ 11). According to Plaintiff, "since 2008 SCI-Forest dietary department has been using old grills, kettles and tiltskillets; which often leaks [sic] an excessive amount of liquid/grease when operated." (Id. at ¶ 12). Recognizing that the grills had not yet been fixed or replaced, Plaintiff allegedly informed Defendants Dittman and Holloway about the grills' "malfunction." (Id. at ¶¶ 13-14). Defendant Holloway allegedly responded that he was aware of the problem, that Defendant Skunda was informed, and that the problem would be addressed soon. (Id. at ¶¶ 13-15). Defendant Dittman then allegedly told Plaintiff that the meal still needed to be prepared as normal. (Id. at ¶ 16). Plaintiff responded that he was not comfortable working under those conditions, but was allegedly told by Defendants Dittman and Holloway that he could either comply or return to his unit with a misconduct. (Id. at ¶¶ 17-18). Plaintiff alleges that he then asked Defendant Attinger for rubber floor mats to protect against the grease leaks and Defendant Attinger suggested that he use cardboard boxes. (Id. at ¶¶ 19-20). Plaintiff subsequently slipped and fell onto a hot grill sustaining severe burns and a sprained wrist. (Id. at ¶ 21).

Defendant Attinger wrote an incident report and sent Plaintiff to medical, where Defendant Woody wrote another incident report, took pictures of Plaintiff's injuries, applied dressing, and prescribed "non-aspirin." (Id. at ¶¶ 22-23). Plaintiff received daily dressing changes from November 22, 2013 through December 17, 2013. (Id. at ¶¶ 24-37). On December 18, 2013, Plaintiff alleges that Defendant Woody "cut open [a] blister with a pair of unsterilized scissors in the absence and without permission of a doctor or a competent person." (Id. at 38).

2

Based on the foregoing allegations, Plaintiff claims that Defendants violated his rights under the eighth, and fourteenth amendments to the United States Constitution.[2] As relief for his claims, Plaintiff seeks compensatory and punitive damages.

On December 8, 2015, Defendants filed a motion to dismiss [ECF No. 18], arguing that Plaintiff has failed to state a cause of action upon which relief may be granted. Plaintiff has since filed a brief in opposition to Defendants' motion. (ECF No. 26). This matter is now ripe for consideration.

**B.**     **Standard of Review**

**1.**     **Motion to Dismiss**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906

---

[2] Plaintiff also purports to state claims under the First and Fifth Amendments; however, as Defendants note, even the most liberal construction of Plaintiff's complaint fails to elicit any cognizable claims other than those asserted under

(3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). A Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C.Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court

---

the Eighth and Fourteenth Amendments.

> should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### **2.** *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) ("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997) (overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

## **II.    DISCUSSION**

### **A.    Eleventh Amendment Immunity**

Defendants contend that Plaintiff's claims against Defendant DOC must be dismissed

because it is entitled to immunity under the eleventh amendment to the United States Constitution. The Eleventh Amendment proscribes actions in the federal courts against, *inter alia*, states and their agencies. Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274 (1977) (state agencies). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it... a State cannot be sued directly in its own name regardless of the relief sought." Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985), citing Alabama v. Pugh, 438 U.S. 781 (1978).

It is well-settled that the DOC, which administers all state correctional institutions, is an agency or arm of the Commonwealth of Pennsylvania and is, thus, entitled to the same Eleventh Amendment immunity that the Commonwealth enjoys. See Steele v. Pennsylvania, 2009 WL 614800 at *8 (W.D.Pa. Mar. 6, 2009). No exceptions to Eleventh Amendment immunity are applicable here. The Commonwealth of Pennsylvania has not consented to be sued, Wilson v. Vaughn, 1996 WL 426538 at *1 n.2 (E.D.Pa. July 30, 1996), nor has Congress expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. Smith v. Luciani, 1998 WL 151803 at *4 (E.D.Pa. March 31, 1998), aff'd, 178 F.3d 1280 (3d Cir. 1999) (Table).

Moreover, as a state agency, Defendant DOC is not a "person" against whom a civil rights action may be brought under Section 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Accordingly, Plaintiff's claims against Defendant DOC will be dismissed and said Defendant will be terminated from this case.

In addition, the individual Defendants assert that they, too, are immune from suit under the Eleventh Amendment, to the extent Plaintiff is suing them in their official capacities. The Court agrees. It is well settled that suits for damages by individuals against, *inter alia*, state officers acting in their official capacities are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 165-67 (1985) (holding that claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment); Chittister v. Dep't of Community and Economic Development, 226 F.3d 223 (3d Cir. 2000) (holding that individuals are barred from seeking monetary damages from state governments or state agencies). See also Bey v. Pennsylvania Department of Corrections, 98 F.Supp.2d 650, 657 (E.D. Pa. 2000) wherein the court summarized well-established law, observing that:

> [t]he Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, under the Eleventh Amendment, absent express consent by the state in question or a clear and unequivocal waiver by Congress, states are immune from suit in federal court. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).

Id.; see also Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161 (3d Cir. 2002).

Thus, Plaintiff's claims for monetary damages against the individual Defendants in their official capacities will be dismissed.

### B. Defendants Siegel and Meck

Defendants argue that Plaintiff's claims against Defendants Siegel and Meck must be dismissed because Plaintiff has failed to establish their personal involvement in the alleged constitutional violations at issue in this case. In particular, it is apparent that Plaintiff's claims

against Defendants Siegel and Meck are based solely on their responses to Plaintiff's grievance regarding the incident of September 21, 2013. (See ECF No. 1, Complaint, at ¶¶ 2, 3, 40-41, 43). It is well-settled that if a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988); Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006). Since there are no allegations establishing any involvement on the part of either Defendant Siegel or Defendant Meck apart from their roles in the grievance process, there is no basis upon which either may be found liable. Thus, Plaintiff's claims against Defendants Siegel and Meck will be dismissed, and said Defendants will be terminated from this case.

### C. Eighth Amendment Health and Safety Claim

Plaintiff claims that Defendants Attinger, Dittman, Holloway, Skunda, and Harringer were deliberately indifferent to his health and safety by forcing him to be exposed to hazardous working conditions in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show: (i) "he has suffered an objectively, sufficiently serious injury," and (ii) "that prison officials inflicted the injury with deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The first prong of the Farmer test is an objective one. Here, Plaintiff has alleged that he suffered a sprained wrist and severe burns that required continued treatment for nearly a month. Based on these allegations, the Court finds that Plaintiff has sufficiently set forth a claim that he

8

has "suffered an objectively, sufficiently serious injury" to satisfy the first prong of the Farmer test.

The second prong of the Farmer test is a subjective one, requiring Plaintiff to demonstrate that Defendants acted with deliberate indifference. To establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Farmer, 511 U.S. at 837. Here, Plaintiff alleges that Defendants knew that "old grills, kettles and tiltskillets" in the kitchen leaked grease, but failed to correct the problem. When Plaintiff voiced his concerns regarding the kitchen's working conditions, he was allegedly told to prepare the meal "as normal," or return to his cell and receive a misconduct. In addition, when he requested rubber mats, Plaintiff was allegedly told by Defendant Attinger to use cardboard boxes instead. Defendants contend that these allegations merely sound in ordinary negligence and fail to state a cognizable Eighth Amendment claim.[3] The Court disagrees. On their face, the foregoing allegations, accepted as true for purposes of Defendants' motion, are minimally sufficient to demonstrate that Defendants were aware of facts from which an inference could be drawn that a substantial risk of serious

---

[3] In support of this assertion, Defendants cite a number of cases that are inapposite, because none of those cases involved allegations that prison officials knew of and disregarded existing prison conditions that posed a substantial risk of serious harm. Instead, all of the cases cited by Defendants involved injuries suffered by an inmate-plaintiff as a result of a contemporaneous negligent act. See Brown v. Simmons, 2007 WL 654920 (S.D.Tex. Feb 23, 2007) (plaintiff burned by hot water because he followed defendant's improper procedures for replacing temperature gauges on heat exchangers in the prison boiler room); Goodson v. Cerliano, 2005 WL 1026563 (E.D.Tex. Mar. 15, 2005) (plaintiff burned after dropping a jar of hot water that was given to him by defendant); Arnold v. South Carolina Dep't of Corr., 843 F.Supp. 110 (D.S.C. 1994) (plaintiff severely burned and scalded when a co-worker attempted to drain water from a 25-gallon steam pot that was functioning improperly).

harm existed, that they drew that inference, and that they knowingly disregarded the risk to Plaintiff's detriment. Thus, Defendants' motion to dismiss Plaintiff's Eighth Amendment health and safety claim will be denied at this early stage of the proceeding.

### D. Fourteenth Amendment Due Process Claim

Plaintiff claims that the foregoing actions of Defendants Attinger, Dittman, Holloway, Skunda, and Harringer, also violated his Fourteenth Amendment due process rights. To the extent Plaintiff is challenging Defendants' deliberate indifference to his health and safety, such claim must be dismissed because Plaintiff has already brought the identical claim under the Eighth Amendment. See Albright v. Oliver, 510 U.S. 266, 273 (1994)(holding that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims")(citation omitted); County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998)("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"); and Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008) ("Appellant's due process clause is identical to his Eighth Amendment claim; he must bring the claim pursuant to the more explicit constitutional amendment").

Alternatively, to the extent Plaintiff is attempting to state a due process claim on other grounds, Plaintiff has failed to plead the existence of a constitutionally protected liberty or property interest that has allegedly been deprived by Defendants Attinger, Dittman, Holloway,

10

Skunda, and Harringer. See Board of Regents v. Roth, 408 U.S. 564 (1972)(to establish a due process claim under the Fourteenth Amendment, a plaintiff must show (1) the existence of a constitutionally protected liberty or property interest; and (2) constitutionally deficient procedures by the state in its deprivation of that interest). As a result, Plaintiff's Fourteenth Amendment due process claim against Defendants Attinger, Dittman, Holloway, Skunda, and Harringer will be dismissed.

### E. Eighth Amendment Medical Claim

Plaintiff generally claims that Defendant Woody was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. It is apparent that this claim arises from a single allegation in Plaintiff's complaint stating that, on December 18, 2013, Defendant Woody "cut open blister with a pair of unsterilized scissors in the absence and without the permission of a doctor or a competent person." (ECF No. 1, Complaint, at ¶ 38).[4]

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

---

[4] All other allegations of the complaint regarding treatment of Plaintiff's burn injury acknowledge that he received daily dressing changes from medical personnel, including Defendant Woody. (ECF No. 1, Complaint, at ¶¶ 23-37).

Deliberate indifference to a serious medical need[5] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977). Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

---

[5] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Here, Plaintiff has not alleged that he suffered any harm as a result of Defendant Woody's alleged action; he merely disagrees with Defendant Woody's medical judgment, which does not rise to the level of a constitutional claim. Pierce, 612 F.2d at 762. Thus, Plaintiff's Eighth Amendment claim against Defendant Woody will be dismissed, and said Defendant will be terminated from this case.

An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: September 16, 2016